LOGAN ENGINEERING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16955. Promulgated May 26, 1949.

*Frederick A. Thulin, Esq.*, for the petitioner.
*Charles D. Leist, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The Commissioner determined deficiencies as follows:

| Year | Income tax | Declared value excess profits tax | Excess profits tax |
|---|---|---|---|
| 1942 | $1,314.40 | $996.57 | $47,611.52 |
| 1943 | 1,274.20 | | 10,588.74 |
| 1944 | | | 18,634.26 |
| 1945 | 2,823.83 | | 15,028.91 |
| Total | 5,412.43 | 996.57 | 91,863.43 |

The sole issue presented by the pleadings is whether the issuance and delivery of negotiable, interest-bearing promissory notes by petitioner corporation to an employees' trust constituted deductible payments within the meaning of section 23 (p) of the Internal Revenue Code.

The facts were stipulated and we incorporate them herein by reference. We refer to only so much of the stipulation as is necessary to a full understanding of our decision.

Petitioner is a corporation, organized under the laws of the State of Illinois. It maintains its books of account and files its tax returns on the accrual basis. Its Federal income, declared value excess profits, and excess profits tax returns for the calendar years in question were filed with the collector for the first district of Illinois.

By an instrument dated December 1, 1942, the petitioner created a profit-sharing trust for the exclusive benefit of its employees, which is stipulated to be a valid tax-exempt trust within the meaning of section 165 (a) of the Internal Revenue Code.

The trust instrument provided for contributions by the corporation as follows:

*Contributions by the Company.* The Company agrees to transfer and pay to the Trustees promptly after the execution of this Agreement certain sums of money, or to deliver to the Trustees legally enforceable, interest-bearing promissory notes obligating the Company to pay to the Trustees certain sums of money, and agrees thereafter, annually, to transfer and pay to the Trustees in each year, additional amounts, not in excess of fifteen (15%) percent of the compensation of the participants during the year, nor in excess of forty (40%) percent of the net earnings of the Company after providing for the payment of all federal and state taxes and dividends of six (6%) percent on outstanding capital stock, provided, the Board of Directors of the Company may, in its discretion, omit any payment whatever in any year in which, in their opinion, distribution of earnings would not be to the best interests of the Company, and consequently no dividends in excess of six (6%) percent on the stock are paid and the Company shall not be obligated to make up such omitted payments in any later year. Furthermore, the Company reserves the right to terminate, temporarily or permanently, this trust and all payments thereto at any time after ten (10) years from the date hereof.

The Company shall have no rights or claims in or to the funds or other property or assets of the trust in the hands of the Trustees, except the right

to require the Trustees to hold, use, apply and pay funds, or other property in their hands, in accordance with the provisions of this trust agreement for the exclusive benefit of the company's employees.

The Company may also contribute to the trust such sums in cash or in other property as the Board of Directors may from time to time determine. The Trustees shall be under no duties nor shall they have the right to require the Company to make contributions to the trust or to inquire into the amounts contributed, or the method or the reason for determining the amount contributed.

Once in each of the four taxable years in question the board of directors of petitioner duly met and authorized contributions to the trust fund in the form of negotiable promissory notes of petitioner in the following amounts:

| Board meeting | Principal amount of notes authorized |
|---|---|
| Dec. 14, 1942 | $32,655.00 |
| Dec. 29, 1943 | 53,370.00 |
| Dec. 29, 1944 | 53,759.54 |
| Feb. 7, 1946 | 59,900.18 |

The $32,655 authorized as a contribution for 1942 was made by the issuance of four negotiable instruments of petitioner, which were delivered to the trust on December 14, 1942, and were paid in 1943. The pertinent information in regard to these four instruments is summarized as follows:

| Amount | Interest rate | Maturity date | Date of payment |
|---|---|---|---|
| $8,655 | 3% | 3/1/43 | 3/3/43 |
| 8,000 | 3% | 6/1/43 | 6/1/43 |
| 8,000 | 3% | 9/1/43 | 9/2/43 |
| 8,000 | 3% | 12/1/43 | 12/2/43 |
| 32,655 | | | |

The $53,370 authorized as a contribution in 1943 was made by the issuance of ten negotiable instruments of petitioner, which were delivered to the trust on December 31, 1943, and were paid in 1944. The pertinent information in regard to these ten instruments is summarized as follows:

| Amount | Interest Rate | Maturity date | Date of payment |
|---|---|---|---|
| $8,370 | ---------- | Demand | 1/12/44 |
| 5,000 | 3% | 1/31/44 | 2/21/44 |
| 5,000 | 3% | 2/29/44 | 2/28/44 |
| 5,000 | 3% | 3/31/44 | 3/29/44 |
| 5,000 | 3% | 4/30/44 | 4/27/44 |
| 5,000 | 3% | 5/31/44 | 5/24/44 |
| 5,000 | 3% | 6/30/44 | 6/27/44 |
| 5,000 | 3% | 7/31/44 | 7/28/44 |
| 5,000 | 3% | 8/31/44 | 8/30/44 |
| 5,000 | 3% | 9/30/44 | 9/29/44 |
| 53,370 | | | |

The $53,759.54 authorized as the contribution for 1944 was made by the issuance of ten negotiable instruments of petitioner, which were delivered December 30, 1944, and were paid in 1945. The pertinent information in regard to these instruments is summarized as follows:

| Amount | Interest rate | Maturity date | Date of payment |
|---|---|---|---|
| $8,759.54 | --- | Demand | 1/23/45 |
| 5,000.00 | 3% | 2/28/45 | 2/24/45 |
| 5,000.00 | 3% | 3/31/45 | 2/24/45 |
| 5,000.00 | 3% | 4/30/45 | 4/30/45 |
| 5,000.00 | 3% | 5/31/45 | 5/29/45 |
| 5,000.00 | 3% | 6/30/45 | 6/28/45 |
| 5,000.00 | 3% | 7/31/45 | 7/31/45 |
| 5,000.00 | 3% | 8/31/45 | 8/27/45 |
| 5,000.00 | 3% | 9/29/45 | 10/23/45 |
| 5,000.00 | 3% | 10/31/45 | 10/31/45 |
| 53,759.54 | | | |

The $59,900.18 authorized as a contribution for 1945 was made by the issuance and delivery of twelve negotiable instruments of petitioner, which were dated December 31, 1945, and were paid in 1946. The pertinent information in regard to these instruments is summarized as follows:

| Amount | Interest rate | Maturity date | Date of payment |
|---|---|---|---|
| $8,355.18 | 3% | Demand | 1/28/46 |
| 1,545.00 | --- | Demand | 2/14/46 |
| 5,000.00 | 3% | 2/28/46 | 2/27/46 |
| 5,000.00 | 3% | 3/28/46 | 3/29/46 |
| 5,000.00 | 3% | 4/28/46 | 4/29/46 |
| 5,000.00 | 3% | 5/28/46 | 5/29/46 |
| 5,000.00 | 3% | 6/28/46 | 6/28/46 |
| 5,000.00 | 3% | 7/28/46 | 7/29/46 |
| 5,000.00 | 3% | 8/28/46 | 8/31/46 |
| 5,000.00 | 3% | 9/28/46 | 9/27/46 |
| 5,000.00 | 3% | 10/28/46 | 10/31/46 |
| 5,000.00 | 3% | 11/28/46 | 11/29/46 |
| 59,900.18 | | | |

A typical example of the resolutions adopted by the board of directors, as set forth below, is taken from the resolutions passed at the meeting of December 29, 1943:

RESOLVED, that this corporation pay to Oscar E. Hesse and Oscar W. Lilliedahl, as Trustees of the Logan Engineering Co. Employees' Profit Sharing Trust, the sum of $53,370.00 as the corporation's contribution for 1943, the same to be paid in cash or in notes before December 31, 1943, as in the discretion of the Treasurer may be for the best interest of the corporation and compatible with available cash on hand; and if the same be paid in notes, then the President, Secretary and Treasurer of the Corporation, be and are hereby authorized to execute proper three (3%) percent interest bearing notes of the corporation, and deliver the same to the aforesaid trustees; that amount so contributed to be allocated to the separate accounts of the employees whose names are shown and certified on the attached memorandum as having been in the continuous employ of the corporation one (1) year from December 1, 1943, but the allocation to be in

accordance with the trust agreement as now existing, or as it may be necessary hereafter to amend the same.

Upon the issuance and transfer of the negotiable instruments, the petitioner entered them in its books of account as current liabilities, charged them to operations, and accrued them as "Notes Payable—Profit Sharing Trust." The trust entered the notes as assets in its books of account.

The cash assets of the petitioner on hand at the end of each of the taxable years in question were as follows:

| | |
|---|---|
| 1942 | $50, 806. 08 |
| 1943 | 54, 889. 13 |
| 1944 | 159, 650. 57 |
| 1945 | 138, 589. 96 |

The net worth of the petitioner at the end of each of the taxable years in question was as follows:

| | |
|---|---|
| 1941 | $226, 640. 13 |
| 1942 | 282, 811. 74 |
| 1943 | 329, 542. 56 |
| 1944 | 464, 768. 01 |
| 1945 | 531, 790. 83 |

The purpose clause of the Logan Engineering Co. employees' profit-sharing trust provided:

THAT, WHEREAS, the Company desires to share its profits with those of its employees who have been largely responsible for the current year's profits and will be primarily responsible for its continued success and also to create an incentive in these employees to continue to give the best efforts of which they are capable in their respective ability to the future growth and development of the Company and to provide a fund for the benefit of those employees in case of retirement, disability or illness, and for their wives, children and close dependents upon their death.

The Commissioner disallowed the deductions claimed by petitioner in the years in which the negotiable promissory notes were given to the trusts (except deductions on account of those notes paid within 60 days after the close of the year), but allowed deductions in the later years when the notes were discharged by cash payment.

There is no disagreement as to the fact that the employees' trust in question is an exempt trust within the meaning of section 165 (a), or that the amounts contributed and sought as a deduction were reasonable within the meaning of section 23 (a), or that the amounts of contribution are not in excess of the ceiling limitations provided in section 23 (p) (1) of the Internal Revenue Code. The sole question is whether a taxpayer on the accrual basis may have a deduction under section 23 (p) in the year when it executed and delivered to an employees' trust its negotiable promissory notes worth their full face value, or must await the final discharge of the notes by payment in cash before

being entitled to a deduction on account of a contribution paid to the trust.

Section 23 (p) allows the deduction of such contributions in the year when "paid."[1] The critical question, therefore, is the meaning of the word "paid."

---

[1] (p). CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

(1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a), in an amount determined as follows:

(i) an amount not in excess of 5 per centum of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Commissioner upon periodical examinations at not less than five-year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, plus

(ii) any excess over the amount allowable under clause (i) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, but if such remaining unfunded cost with respect to any three individuals is more than 50 per centum of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years, or

(iii) in lieu of the amounts allowable under (i) and (ii) above, an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount not in excess of 10 per centum of the cost which would be required to completely fund or purchase such pension or annuity credits as of the date when they are included in the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, except that in no case shall a deduction be allowed for any amount (other than the normal cost) paid in after such pension or annuity credits are completely funded or purchased.

(iv) Any amount paid in a taxable year in excess of the amount deductible in such year under the foregoing limitations shall be deductible in the succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year in accordance with the foregoing limitations.

(B) In the taxable year when paid, in an amount determined in accordance with subparagraph (A) of this paragraph, if the contributions are paid toward the purchase or retirement annuities and such purchase is a part of a plan which meets the requirements of section 165 (a) (3), (4), (5), and (6), and if refunds of premiums, if any, are applied within the current taxable year or next succeeding taxable year towards the purchase of such retirement annuities.

(C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165 (a), in an amount not in excess of 15 per centum of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan. If in any taxable year beginning after December 31, 1941, there is paid into the trust or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and be deductible when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed 15 per centum of the compensation otherwise paid or accrued during such succeeding taxable year to the beneficiaries under the plan. In addition, any amount paid into the trust in a taxable year beginning after December 31, 1941, in excess of the

Deductions are granted to taxpayers by the legislative grace of Congress, and in order to secure deductions, taxpayers must clearly show that they are "within the terms of the statute as written." *P. G. Lake, Inc.* v. *Commissioner*, 148 Fed. (2d) 898, 900.

Where the definite word "paid" is used in the statute, its ordinary and usual meaning is to liquidate a liability in cash. *P. G. Lake, Inc.* v. *Commissioner, supra.* When a broader scope of deduction is intended in section 23, the words "paid or incurred" and "paid or accrued" are used. See subsections (a) (1) and (2), (b), and (c).

It is significant that in subsections (o), (p), and (q) of section 23, dealing with contributions as deductions, neither the words "paid or accrued" nor "paid or incurred" are used. To the contrary, the phraseology is more restrictive. In subsections (o) and (q) the deduction

---

amount allowable with respect to such year under the preceding provisions of this subparagraph shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this subparagraph shall not exceed 15 per centum of the compensation otherwise paid or accrued during such taxable year to the beneficiaries under the plan. The term "stock bonus or profit-sharing trust", as used in this subparagraph, shall not include any trust designed to provide benefits upon retirement and covering a period of years, if under the plan the amounts to be contributed by the employer can be determined actuarially as provided in subparagraph (A). If the contributions are made to two or more stock bonus or profit-sharing trusts, such trusts shall be considered a single trust for the purposes of applying the limitations in this subparagraph.

(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

(E) For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual.

(F) If amounts are deductible under subparagraphs (A) and (C), or (B) and (C)· or (A), (B), and (C), in connection with two or more trusts, or one or more trusts and an annuity plan, the total amount deductible in a taxable year under such trusts and plans shall not exceed 25 per centum of the compensation otherwise paid or accrued during the taxable year to the persons who are the beneficiaries of the trusts or plans. In addition, any amount paid into such trust or under such annuity plans in a taxable year beginning after December 31, 1941, in excess of the amount allowable with respect to such year under the preceding provisions of this subparagraph shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this subparagraph shall not exceed 30 per centum of the compensation otherwise paid or accrued during such taxable years to ·the beneficiaries under the trusts or plans. This subparagraph shall not have the effect of reducing the amount otherwise deductible under subparagraphs (A), (B), and (C), if no employee is a beneficiary under more than one trust, or a trust and an annuity plan.

If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, this paragraph shall apply as if there were such a plan.

(2) DEDUCTIONS UNDER PRIOR INCOME TAX ACTS.—Any deduction allowable under section 23 (q) of the Revenue Act of 1928 (45 Stat. 802), or the Revenue Act of 1932 (47 Stat. 182), or the Revenue Act of 1934 (48 Stat. 691), under section 23 (p) of the Revenue Act of 1936 (49 Stat. 1661), or the Revenue Act of 1938 (52 Stat. 464), or the Internal Revenue Code for a taxable year beginning before January 1, 1943, which under such section was apportioned to any taxable year beginning after December 31, 1942, shall be allowed as a deduction for the years to which so apportioned to the extent allowable under such section if it had remained in force with respect to such year.

is allowed of "contributions or gifts of which payment has been made within the taxable year"; and in subsection (p) contributions to an employees' trust are allowed "if contributions are paid by an employer * * * (c) in the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust * * * " Since the words "paid or accrued" appear immediately thereafter with reference to a limitation upon the amount of the deduction, it can not be said that the use of the definite word "paid" by itself and uncoupled with "accrued" or "incurred" in referring to contributions deductible under this subsection was inadvertent on the part of Congress.

In view of the exception spelled out in section 23 (p) (1) (E), it is apparent that one of the purposes of section 23 (p) was to place cash and accrual taxpayers on an equal footing with respect to contributions to employees' trusts, even though the legislative history of this subsection is not as explicit as that of subsections 23 (o) and (q). That Congress intended that only contributions actually paid should be deducted under section 23 (p) appears from the Report of the Ways and Means Committee on the Revenue Revision Act of 1948, 80th Cong. Rept. No. 2087, p. 13, in which it was said, concerning section 23 (p) (1) (E), that "An employee on the accrual basis of accounting may under existing law deduct contributions *actually paid* within the first 60 days of the subsequent year." (Italics supplied.) See also Regulations 111, sec. 29.23 (p)–1. While the Congressional report above referred to was made some years after the amendments to section 23 (p), it may be considered in ascertaining the legislative intent. See *Sioux Tribe* v. *United States*, 316 U. S. 317, 329–330.

We therefore consider that the general question posed in the instant proceeding is analogous to that posed in *Estate of Modie J. Spiegel*, 12 T. C. 524. The question there was whether there had been an actual payment of a charitable contribution in the taxable year by the execution and delivery of a check, while here the question is whether there were actual payments of contributions to an employees' trust in the taxable years by the execution and delivery of promissory notes which were not paid until the subsequent years.

The answer to the question presented in the instant case is indicated in our opinion in the *Spiegel* case. In pointing out there that payment by check was at least "conditional payment," we said, "It [payment by check] was necessarily placed in a different category from a mere promise to pay; or even from such a promise reduced to formal terms and issued in the form of a negotiable promissory note." We rested our conclusion in that case upon the reasoning that "the issuance and delivery of the checks * * * [by the decedent donor constituted] a conditional payment of charitable contributions which, upon the presentation and payment of the checks, became absolute and related back to the time when the checks were delivered." No such

reasoning is applicable to the instant case, where promissory notes, rather than checks, were issued and delivered by the taxpayer; and our opinion in the Spiegel case explicitly indicates the conclusion in that case would have been different if promisory notes had been involved there.

We conclude that section 23 (p), like sections 23 (o) and 23 (q), had the effect of placing cash and accrual taxpayers upon an equal footing (subject to the exception spelled out in section 23 (p) (1) (E)); that an actual payment of the contribution to an employees' trust in the taxable year is a prerequisite to the allowance of a deduction on account thereof, and that the issuance and delivery of a promissory note does not constitute such actual payment.

Petitioner's argument in the instant case is rested upon several opinions of the Circuit Courts of Appeal involving a construction of section 24 (c), which held that the word "paid" as used in that section "meant that the debts were paid when the deductions constituted income actually or constructively received by the creditor." *Musselman Hub-Brake Co.* v. *Commissioner*, 139 Fed. (2d) 65, 68. See also *Anthony P. Miller, Inc.* v. *Commissioner*, 164 Fed. (2d) 268; *Akron Welding & Spring Co.*, 10 T. C. 715. The fundamental reasoning justifying that conclusion is stated in the *Musselman Hub-Brake Co.* case as follows:

\* \* \* \* \* \* \*

The rule that words and phrases used in a statute are to be taken and understood in their plain, ordinary and popular sense, is not always to be followed in construing the language of taxing statutes. If it is clear from the purpose of the statute, read in the light of the whole subject to which it relates, that Congress used the words therein in a broad or different sense from that which would ordinarily be attributed to them, such words and phrases must be given the meaning intended by the Congress. Applying this rule and using the keys found in Sections 23 and 24 (c) (2) and (3), and the legislative history of 24, to unlock the meaning of the word "paid", it would seem that Congress meant that the debts were paid when the deductions constituted income actually or constructively received by the creditor. In other words, if the debtor credited to the account of the creditor sums under circumstances which would require reporting income constructively received or the creditor received property, either tangible or intangible, having a cash value equal to the deduction claimed by the debtor, the deduction would be allowable under the statute, because the creditor would be required to include these sums in his gross income.

\* \* \* \* \* \* \*

In the same case it was pointed out that the section construed was not one which granted a deduction and, therefore, was to be strictly applied, the court saying in part:

We are not here concerned with the rule that deductions are a matter of legislative grace and therefore the taxpayer must bring a claimed deduction clearly within the terms of the statute, because the statutes we are considering all relate to deductions. When Section 23 is applied, the deductions in question are clearly allowable, but for Section 24 (c). So, the rule applies that the two sections

should be integrated to carry into effect their combined purpose. *Anderson* v. *Pacific Coast S & S Co.*, 225 U. S. 187, 203, 32 S. Ct. 626, 56 L. Ed. 1047.

In the instant case the section of the code which is involved is one which grants a deduction, and not one which purports to limit a deduction already granted; and there is no legislative history, or obvious legislative purpose, or statutory language justifying a conclusion that Congress used the word "paid" in "a broad or different sense from that which would ordinarily be attributed to [it] * * *." We are therefore of the opinion that the disposition of this proceeding is not controlled by decisions interpreting section 24 (c) (1) of the Internal Revenue Code.

Reviewed by the Court.

*Decision will be entered for respondent.*