THE COLORADO NATIONAL BANK OF DENVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66391. Filed July 21, 1958.

*Morrison Shafroth, Esq.*, for the petitioner.
*Frank C. Conley, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $24,742.80 in income tax of the petitioner for 1954. The facts have been presented by a stipulation of facts which is adopted as the findings of fact. The petitioner filed its cash basis return for 1954 with the director of internal revenue at Denver, Colorado.

The petitioner claimed a deduction of $110,441.49 on its return as amounts contributed to a trust under a pension plan. The Commissioner, in determining the deficiency, disallowed $73,284.65 [1] of that

---

[1] He allowed amounts paid to a life insurance company.

total. The only question for decision is whether the $73,284.65 was deductible under section 404 (a) and (a) (1) (C) of the Internal Revenue Code of 1954. The Commissioner defends his disallowance of that amount solely on the ground that it was not "paid" during the taxable year.

The total amount deducted equaled 10 per cent of the amount which would have been required to fund completely or purchase the past service pension credits as of the date they were included in the plan. The district director ruled that the pension plan as amended met the requirements of section 165 of the Internal Revenue Code of 1939 as amended (now section 401 (a)) and that the trust established thereunder was a qualified trust entitled to exemption under the provisions of that section and continued to be a qualified trust and exempt from income tax under section 401 (a).

The petitioner, by deed dated December 29, 1954, conveyed to the trustees of the pension trust lots 26 through 32, block 108, East Denver, reserving, however, all improvements on the lots.[2] Its bank building was on that land. The pension trust immediately leased the land to the bank for a 20-year term at an annual rental equal to 6 per cent net on $389,165.52, payable in equal monthly installments and in the same agreement gave to the petitioner an option "[a]t any time that Lessee shall not be in default on the terms of this lease" to repurchase the property for $389,165.52 in cash. The trustees of the pension trust accepted the transfer of the property as a contribution of $389,165.52.

The fair market value of the land without improvements at the time it was transferred by the petitioner to the pension trust was at least $700,000. A net return of 6 per cent per annum payable monthly was at least 1 per cent in excess of the going rate of return for an equally secured investment of $389,165.52. The fair market value of the property, subject to the lease and option, was at least $389,165.52 at the date of the transfer. The rentals were not to reduce the option price.

The Commissioner argues that a contribution to a pension trust to be deductible must be paid in cash or its equivalent during the taxable year, whereas the transaction which took place in this case amounted to no more than an obligation to make a cash payment to the pension trust at some future time when the option to repurchase might be exercised. He says that the "considerable value" of the deed did not make it "the equivalent of cash" and it was "merely a piece of paper evidencing a payment to be made sometime within the

---

[2] The petitioner was able to avoid a reduction in its liquid assets and capital accounts by contributing the bank site instead of cash to the pension trust, since for many years the cost or value of the bank site had not been included as an asset on the bank's published financial statements.

next twenty years" as far as the fund was concerned. The only cases cited by the Commissioner involve the question of whether the giving of a promissory note could be considered payment of a contribution, a question which is not here involved.

The title of section 404 of the Internal Revenue Code of 1954 is "DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN." The rule of subsection (a), insofar as it is applicable here, is—

If contributions are paid by an employer to or under a * * * pension * * * plan, * * * such contributions * * * shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

(1) PENSION TRUSTS.—In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 501 (a), in an amount determined as follows:

(C) * * * an amount equal to the normal cost of the plan, * * * plus, if past service * * * pension * * * credits are provided by the plan, an amount not in excess of 10 percent of the cost which would be required to completely fund or purchase such pension * * * credits as of the date when they are included in the plan * * *

Section 162 (a) (1) allows a corporation to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. Section 212 does not apply to corporations.

Charitable contributions are recognized as paid and deductible even though made in property. *Priscilla M. Sullivan*, 16 T. C. 228, 231; *Mattie Fair*, 27 T. C. 866; *Champlin* v. *Broderick*, 38 A. F. T. R. 1533, 48–2 U. S. T. C. par. 9332; Regs. 111, sec. 29.23(o)–1; sec. 1.170–1, Income Tax Regs. (T. D. 6285, 1958–1 C. B. 127, 131). A payment need not be cash and even a debt can be paid in property if the debtor is willing to accept the property as payment. There is no reason why a contribution to a pension trust could not be made in property and still be deductible. The transfer which the petitioner made to its pension trust bore no resemblance to a promissory note nor was it a mere promise to pay something in the future. It was a present transfer of an asset worth at least $389,165.52. The petitioner was not obligated to repurchase the bank site or to pay anything on the purchase price fixed in the option. The stipulation shows that the trust could have sold the real estate subject to the lease and option for at least $389,165.52. There was nothing in the agreement between the petitioner and the pension trust to prevent

such a sale. The transfer was immediately and irrevocably beneficial to the trust and the benefit was far greater than a cash payment of $73,284.65 would have been. The trust received an asset worth at least $389,165.52, well invested and producing income to the trust at a rate higher than the going rate for similar investments. No reasonable person would fail to regard such a transfer, with leaseback and option, as the equivalent of more than $73,284.65 in cash. The petitioner made a present contribution of property which represented a payment in kind rather than in cash, but a payment, nevertheless within the words and intent of the applicable statutory provisions.

The parties have agreed in the stipulation to a number of other adjustments which are thus not in controversy.

*Decision will be entered under Rule 50.*