**WASATCH CHEMICAL COMPANY, a Utah corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7062.**

United States Court of Appeals Tenth Circuit.

Feb. 26, 1963.

Frank J. Allen, Salt Lake City, Utah (Edward W. Clyde, Salt Lake City, Utah, on the brief), for petitioner.

Michael A. Mulroney, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Washington, D. C., on the brief), for respondent.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

The petitioner adopted a profit sharing pension plan and made contributions to the trust by delivery of its own unsecured, interest-bearing promissory notes with stated maturity dates. The question on this appeal is whether the delivery of such notes constituted "payment" to allow them as deductions on the petitioner's income tax returns under Section 404 of the Internal Revenue Code of 1954.

More particularly the issues relate to asserted deficiencies in petitioner's income tax for 1955 and 1956. The contribution to the trust administering the pension plan claimed as a deduction for 1955 was made by delivery of the corporation's own unsecured promissory note in the face amount of $41,412.77 due in five years with interest at six per cent. For 1956 the contribution was again petitioner's unsecured promissory note, due in five years with six per cent interest, this time in the face amount of $36,702.-93. Both notes were discharged in December 1958. In its income tax returns filed under the accrual method of accounting, petitioner claimed the face amount of these notes as deductible, but the Commissioner disallowed the deductions on the ground that the contributions were not "paid" by the delivery of these notes. The Tax Court also held that these notes were not contributions "paid" to the trust to permit petitioner to deduct them, and consequently upheld the Commissioner's determination. The matter is here on the petition to review the decision of the Tax Court.

Section 404(a) of the Internal Revenue Code of 1954 provides in part:

"If contributions are paid by an employer to or under a * * * profit-sharing, or annuity plan, * * * such contributions * * * shall be deductible under this section * * * [i]n the taxable year when paid, if the contributions are paid into a pension trust * * *" etc.,

and in (a) (6):

"For purposes of paragraphs (1), (2), and (3), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made * * *."

The statute uses the words "paid" and "payment." Petitioner urges that the delivery and the acceptance of the notes constituted "payment" when considered as an ordinary commercial transaction, because the profit-sharing plan provides that contributions may be made in money, other assets, or contractual obligations, and because the authorities have held that demand notes constitute payment and for these purposes term notes are no different.

The present Section 404 originated in Section 23(q) of the Revenue Act of 1928, which read in part:

"An employer establishing or maintaining a pension trust * * * shall be allowed as a deduction * * * a reasonable amount transferred or paid into such trusts * * * beginning with the year in which the transfer or payment is made."

Thus the phrase "transfer or payment" was used in the original act which was devised to allow deductions for funds transferred to pension trusts from corporate pension reserve funds. There appears to be no significant legislative history relating to the use of the phrase

"transfer or payment." [1] This wording was retained in the 1936 Act as Section 23(p),[2] and also in the 1939 Act. The 1942 Act [3] dropped the word "transferred" and left the word "paid" as it now is. The deletion of "transferred" is not explained in the available legislative history. The Senate Finance Committee Report [4] uses the word "paid" and refers to contributions "paid," but makes no reference to the deletion of "transferred," nor does it define "paid." The petitioner urges that this silence shows a lack of concern on the part of Congress as to how or in what manner the contribution was to be paid. Further it argues that the word "transferred" was dropped because it was redundant. The Government urges that "transferred" was used to permit a transfer of cash from the old pension reserves of the corporations and the word "paid" likewise meant cash—thus both terms referred to cash payments.

It appears that by 1942 there was no further need to refer to the corporate pension reserves and consequently no need to refer to this "transfer" to pension trusts and the term was dropped from the statute. The word "paid" remains, and its meaning was not thereby altered. The argument as advanced by the Government that the transfers from the corporate reserves would be "transfers" in cash and therefore the word "paid" also meant cash, has no basis in the legislative history nor in the authorities to support it. Unfortunately, the available legislative history of Section 404 does not assist us in the solution of our problem.

There are several significant cases which treat comparable fact situations under this and similar sections of the Revenue Act. The first to be considered is Anthony P. Miller, Inc. v. Comm'r, 164 F.2d 268, 4 A.L.R.2d 1219 (3d Cir., 1947),

cert. denied 333 U.S. 861, 68 S.Ct. 741, 92 L.Ed. 1140. This case concerned the then Section 24(c) (1), and the question whether demand promissory notes given by a corporation to one of its officers as salary constituted payment of the salary. The Government argued that "paid" meant the giving of cash or its equivalent. The court there held that the officer's salary was "paid" by the delivery of the notes, and so agreed with the Sixth Circuit in Musselman Hub-Brake Co. v. Comm'r, 139 F.2d 65 (1943). In the Miller decision the court referred to the basic law of negotiable instruments and considered it as an ordinary commercial transaction. The court said:

"The legal rule is well recognized that the giving and acceptance of the negotiable instrument is conditional payment of the debt and the creditor cannot proceed against the debtor on the original obligation until the instrument is either surrendered or dishonored. If the parties agree, the acceptance of the negotiable paper will discharge the original debt altogether."

The court then observed that the solvent corporation's demand notes were negotiable and were like checks, that is "payable at once." The holding was that there was payment and the deductions should be allowed.

Musselman Hub-Brake Co. v. Comm'r, supra, accepted by the court in the Miller case, was concerned with the question whether the corporation had "paid" interest and royalties to its principal stockholder by the delivery to him of the corporation's demand promissory notes. This again concerned Section 24(c) of the Code which contained only the word "paid." It read in part as follows: " * * * no deduction shall be allowed * * * [i]f such expenses or interest are not paid within the taxable year * * *."

1. See Senate Finance Committee statement, 1939–1 Cum.Bull. Pt. 2, p. 423, Senate Report No. 960, 70th Cong. 1st Sess., p. 21.

2. C. 690, 49 Stat. 1648.

3. C. 619, 56 Stat. 798.

4. S.Rep. No. 1631, 77th Cong.2d Sess., pp. 140–2, 1942–2 Cum.Bull. 504, 608–9.

As to the section's legislative history the court concluded that the test should be whether and when the recipient received income, and the deductions were allowable when and if the creditor received "property" having a cash value equal to the claimed deduction. The court found that the notes in question had such a value readily realizable, and held the demand notes to be payment under the code section there concerned. The Musselman case is significant because the statute there construed was one which attempted to correlate the tax consequences on both sides of transactions involving the payment of compensation. Under this situation the court considered the event from the recipient's side, found there was income there, and this gave an assist to the finding of payment by the other side. The same method could be applied to the case at bar; that is from the recipient's side it could be determined whether something had been received of value and if received it must have been delivered and paid by the other party.

The next case which is pertinent is Sachs v. Comm'r, 208 F.2d 313 (3d Cir., 1953). Here the court had two separate cases in each of which the taxpayer had delivered its own demand notes to the trustee of its pension fund. The notes were negotiable and payable at a bank. It would appear from the opinion that the parties intended that an immediate demand be not made. The court held that there had been payment and deduction was allowed to Slaymaker Lock Co. as there was evidence that the corporation was solvent and that the note was worth its face amount at the time of delivery. As to Sachs, however, the court felt the record did not show whether the maker was solvent nor show the value of this note at the time of delivery; consequently it remanded the Sachs case for further evidence on the value of the note. Thus under the section of the act with which we are here concerned, the Third Circuit held that the demand notes there used constituted payment and followed and relied on Anthony P. Miller, Inc. v. Comm'r, supra. In so doing the court considered the cases construing Section 24(c) and regarded them as applicable. The word "paid" alone appears in both sections, they are otherwise comparable, and we feel that the authorities on Section 24(c) are at least persuasive here. The court held that "paid" or "payment" did not necessarily mean payment in cash, and this we believe is a basic point in the case at bar.

One of the more recent cases is Time Oil Co. v. Comm'r, 258 F.2d 237 and 294 F.2d 667 (9th Cir.). Here the corporation delivered non-interest bearing demand notes and later replaced these notes with stock. The question arose as to which year the deductions could be allocated under the 1939 Code. The court held that the date the notes were delivered was the date of payment. The court referred to and relied on the Sachs case, supra, and Anthony P. Miller, Inc. v. Comm'r, supra. The court did not discuss in the opinion the solvency of the maker. It would appear from the decision that the parties did not intend that the demand notes be presented for payment until after some delay, and it further appears that the notes were not payable at a bank as in Sachs.

When the decisions are traced through the Time Oil cases, it appears that the delivery of a demand note is payment under circumstances where no demand is to be made until after a lapse of time. The authorities thus hold that payment does not mean payment in cash. In the case at bar upon delivery of petitioner's notes, payment was thereby made in the amount of the then value of these notes, and in that amount was the equivalent of cash. In this connection it should be mentioned that the Tax Court in its opinion in the case at bar noted that on several occasions under Section 24(c) of the 1939 Internal Revenue Code, it has been held that the delivery of a term promissory note constituted payment. The Tax Court however states that these are not controlling here because of differing concepts of the two sections: "Section 404 is one which grants a deduction, whereas Section 24(c) of the 1939 Code' pur-

ports to limit a deduction already granted." The court in the Sachs case said in effect that unless there was some "compelling reason" the word "paid" in 23(p) (now Section 404) and in 24(c) should have the same meaning. The differing concepts referred to by the Tax Court are not such a "compelling reason." The Time Oil case also accepts the reliance in Sachs upon the construction of "paid" in 24(c) by Anthony P. Miller, Inc. v. Comm'r, supra. In Mundet Cork Corp., 7 T.C.M. 411 (1948), the Tax Court under Section 24(c) rejected a suggested distinction between demand and term notes given in payment of salary.

Further as to whether cash is required the Tax Court in Colorado National Bank of Denver v. Comm'r, 30 T.C. 933 (1958), held that a contribution to a pension trust under Section 404 may be paid by a conveyance of real estate to the trustees. The Tax Court mentioned in the opinion:

"A payment need not be cash and even a debt can be paid in property if the debtor is willing to accept the property as payment. There is no reason why a contribution to a pension trust could not be made in property and still be deductible."

The opinion however says the transfer there made did not resemble a promissory note and that it was a present transfer of an asset having a worth of a stated amount. The opinion certainly stands for the proposition that a transfer of something of value is recognized as payment.

The authorities on demand notes seem to be clear, and as mentioned, these represent situations where it had been agreed that a demand would not be made until some time from delivery had elapsed. The cases already decided have taken us far down the road on promissory notes as payment, and we feel so far indeed that there is now no return and also no basis to distinguish notes with a stated maturity from demand notes. There can be no real difference in principle, for the purposes here involved, between a demand note to be held for a time and a note having a stated maturity. If either is delivered and accepted, there is brought about significant changes in the legal relationship of the parties. These changes are of such a character that they constitute "payment" in the case at bar.

Some of the earlier cited cases compare demand notes to checks and then checks to cash and therefore conclude that demand notes are payment in cash. However payment in cash is not required and the authorities now clearly so hold. In the Sachs case and the Time Oil cases the concern instead was whether the notes had any value at the time of delivery, thus somewhat the same considerations were expressed as would be had there been payment in kind. The Slaymaker case was remanded to the Tax Court for a determination of this value. Since it has been decided that payment need not be made in cash; that a demand note to be held for a time is payment; that there is no difference in principle between such a transaction and a term note, the question remaining is whether anything of value was delivered to the trustee and if so what was its value.

The Government in its brief would distinguish the Miller and Musselman cases because they are under Section 24 (c), and "[s]econdly, and in any event, the above cases involved *demand* promissory notes which had an immediate realizable value in their face amount." This is a recognition that the value question is the basic one. For our purposes here, whether the note is a demand or a term note, or whether secured or unsecured, other things being equal, has a bearing only on value. Any note has a value at the time of delivery ranging from zero upwards which can be determined. This is the ordinary business consequence of the delivery of a promissory note, this is the value which here changed hands on delivery, and this is the value which was here "paid" under Section 404 in each of the two years. This is the value which can only be ascertained in further proceedings.

The judgment of the Tax Court is vacated and the case is remanded for a

determination of the value of the notes at the time of their delivery, also to decide those issues not disposed of by reason of the previous decision, and for further proceedings in accordance with this opinion.