DON E. WILLIAMS COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5946–71. Filed May 14, 1974.

*Donald P. Cooney*, for the petitioner.
*Allan E. Lang*, for the respondent.

OPINION

GOFFE, *Judge:* The Commissioner determined deficiencies in petitioner's income tax for the taxable years ended April 30, 1967, April 30, 1968, and April 30, 1969, in the amounts of $15,162.87, $1,360.64, and $530.42, respectively. The sole issue for decision is whether petitioner's promissory notes issued and delivered to the trustees of the trust for its profit-sharing plan constitute "payment" as required by section 404(a) of the Internal Revenue Code of 1954 [1] thus entitling petitioner to deductions for the face amounts of the notes in the taxable years the notes were issued.

All of the facts have been stipulated. The stipulation of facts and exhibits are incorporated herein and adopted as our findings of fact. Only the facts necessary to an understanding of our opinion will be summarized herein.

Petitioner is a corporation organized under the laws of the State of Illinois with principal offices in Moline, Ill. Its principal business activity is that of a manufacturers representative and wholesaler for factory tools and supplies.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

Petitioner maintains its books and records and files its income tax returns on the accrual method of accounting using a fiscal year ending on April 30. Its returns for the taxable years before us were filed with the district director of internal revenue at Chicago, Ill.

Petitioner has a profit-sharing plan which has been "qualified" since 1964. The trustees of the trust for the profit-sharing plan are its bank and the three principal shareholders of petitioner, who are also petitioner's officers.

Toward the end of each of its taxable years before us, the board of directors of petitioner authorized contributions to petitioner's profit-sharing plan and in the month immediately following the close of its taxable years petitioner delivered to the trustees its interest-bearing secured demand promissory notes for face amounts equal to the deductions claimed as employer contributions to the profit-sharing plan. Such amounts were accrued as liabilities on the books of petitioner at the close of each of the taxable years. The notes issued in 1967 and 1968 bore interest at the rate of 6 percent and the note issued in 1969 bore interest at the rate of 8 percent. Interest was payable at maturity. The officers and principal shareholders of petitioner, each as principals, jointly and severally, executed the notes as accommodation makers. The notes were secured solely by collateral owned by the accommodation makers and consisted of some stock in petitioner owned by one shareholder and the respective interests of two of the shareholders in the profit-sharing plan. The value of the collateral pledged by the two shareholders combined with the net worth of the third shareholder, who pledged nothing, exceeded the face amounts of the notes.

Toward the end of each of its taxable years, petitioner paid each of the demand notes it had issued at the beginning of such year, together with the accrued interest thereon.

Petitioner deducted on its income tax returns the face amounts of the notes issued to the trustees of the profit-sharing plan and the Commissioner, in his statutory notice of deficiency, disallowed the deductions claimed, less the payments on the notes, on the grounds that the notes did not represent "payments" of the contributions within the meaning of section 404(a).

Section 404(a) and its predecessor, section 23(p) of the Internal Revenue Code of 1939, allow deductions for contributions *paid* by an employer to a qualified profit-sharing plan. Such contributions are, by the terms of section 404(a), not deductible as trade or business expenses under section 162 nor are they deductible as expenses for the production of income under section 212. The deduction is allowable only if paid within the taxable year or, in the case of taxpayers on the accrual method of accounting, if paid within the time in which the

income tax return of the employer is due to to be filed. Sec 1.404(a)–1(c),[2] Income Tax Regs. Other exceptions provide for situations not applicable here.

It is clear from the regulations that the contribution must be paid. The validity of the regulations is not challenged. Petitioner contends that the notes which it issued represent payment and respondent contends that notes do not represent payment for the purposes of section 404(a). Respondent relies upon four of our decisions and petitioner relies upon the decisions of three Courts of Appeals which reversed three of these cases.

The four cases involved, in chronological order, are *Logan Engineering Co.*, 12 T.C. 860 (1949); *Slaymaker Lock Co.*, 18 T.C. 1001 (1952), reversed sub nom. *Sachs* v. *Commissioner*, 208 F. 2d 313 (C.A. 3, 1953); *Time Oil Co.*, 26 T.C. 1061 (1956), revd. 258 F. 2d 237 (C.A. 9, 1958); *Wasatch Chemical Co.*, 37 T.C. 817 (1962), revd. 313 F. 2d 843 (C.A. 10, 1963).

An appeal in the instant case would lie in the Court of Appeals for the Seventh Circuit which has not considered the issue.

With all due respect to the Courts of Appeals for the Third, Ninth, and Tenth Circuits, we decline to follow their decisions. Instead, we shall continue to follow our decisions, two of which were reviewed by the Court and not burdened with concurring or dissenting opinions. We do so because we continue to believe our decision was correct in the first case, *Logan Engineering Co.*, *supra*. In that case, we construed section 23(p)(1) of the Internal Revenue Code of 1939, the predecessor of section 404(a) with which we are now concerned. We pointed out that the word "paid" used in the statute should be given its ordinary and usual meaning, "to liquidate in cash." *P. G. Lake, Inc.* v. *Commissioner*, 148 F. 2d 898 (C.A. 5, 1945); cf. *Commissioner* v. *Drovers Journal Pub. Co.*, 135 F. 2d 276, 278 (C.A. 7, 1943). However, delivery of a check satisfies the requirement of a liquidation in cash

---

[2] Sec. 1.404(a)–1:

(c) Deductions under section 404(a) are generally allowable only for the year in which the contribution or compensation is paid, regardless of the fact that the taxpayer may make his returns on the accrual method of accounting. Exceptions are made in the case of overpayments as provided in paragraphs (1), (3), and (7) of section 404(a), and, as provided by section 404(a)(6), in the case of payments made by a taxpayer on the accrual method of accounting not later than the time prescribed by law for filing the return for the taxable year of accrual (including extensions thereof). This latter provision is intended to permit a taxpayer on the accrual method to deduct such accrued contribution or compensation in the year of accrual, *provided payment is actually made* not later than the time prescribed by law for filing the return for the taxable year of accrual (including extensions thereof), but this provision is not applicable unless, during the taxable year on account of which the contribution is made, the taxpayer incurs a liability to make the contribution, the amount of which is accruable under section 461 for such taxable year. See section 461 and the regulations thereunder. There is another exception in the case of certain taxpayers who are required to make additional contributions as a result of the Act of June 15, 1955 (Public Law 74, 84th Cong., 69 Stat. 134), and the regulations thereunder. [Emphasis added.]

because it represents a conditional payment, but a promissory note is merely a negotiable promise to pay. *Estate of Modie J. Spiegel*, 12 T.C. 524 (1949).

We based our decision in *Logan Engineering* on legislative intent derived from the Report of the Ways and Means Committee on the Revenue Revision Act of 1948, H. Rept. No. 2087, 80th Cong., 2d Sess., p. 13, wherein it stated, concerning section 23(p)(1)(E), that "An employer on the accrual basis of accounting may under existing law deduct contributions *actually paid* within the first 60 days of the subsequent year." (Emphasis added.) The report explained the committee's recommendation to extend the time from 1 month to 2 months and 15 days within which an accrual basis employer could pay the contribution to the pension or profit-sharing plan after the close of the taxable year and yet be entitled to deduct the contribution. *Sioux Tribe* v. *United States*, 316 U.S. 317, 329–330 (1942). The above-quoted language appears in the regulations set forth in footnote 2 which petitioner does not challenge as invalid.

We followed *Logan Engineering Co., supra,* in *Slaymaker Lock Co., supra,* which was reversed sub nom. *Sachs* v. *Commissioner, supra,* by the Court of Appeals for the Third Circuit.

The Third Circuit bases its decision on *Miller* v. *Commissioner*, 164 F. 2d 268 (C.A. 3, 1947), which involved section 24(c)(1) of the Internal Revenue Code of 1939. That section covered the payment of expenses and interest following the close of a taxable year and is the predecessor of section 267 of the Internal Revenue Code of 1954.

Section 267, by its specific terms, applies to the disallowance of deductions for payments to related taxpayers; i.e., losses, interest, trade or business expenses deductible under section 162, and expenses incurred in the production of income under section 212. The deduction with which we are concerned is allowable only under section 404(a) and that section specifically precludes allowance of a deduction for such contributions under section 162 or section 212.

Because section 404(a) specifically prohibits deduction of the employer contribution under section 162 or section 212, and section 267, by its own terms, applies only to losses, taxes, and deductions allowable under sections 162 and 212, section 267 cannot have any bearing upon "payment" under section 404(a). The Third Circuit in *Sachs* incorrectly drew an analogy between "payment" under section 404(a) and "payment" under other Code sections. "Payment" under section 404(a) should, instead, be interpreted independently in the light of the intent of Congress as we explained above.

We also disagree with the Third Circuit when it suggests that there is little difference between a demand promissory note and a check

drawn on a bank account. The notes in *Sachs* were payable at a bank. In the instant case, the notes were not payable at a bank.

Illinois law, which applies here, embodies alternative B of section 3–121 of the Uniform Commercial Code which provides that a note "payable at a bank is not of itself an order or authorization of the bank to pay it." The analogy of a promissory note payable at a bank and a check as bank draft upon which the Third Circuit relied in *Sachs*, therefore, cannot possibly apply in Illinois. The comparison of a bank draft or check and a promissory note *not* payable at a bank is even more farfetched when the relationships of the parties are considered.

In the instant case, the officers and principal shareholders of the corporation provided the only security for the notes and they, together with a corporate trustee, were also the trustees who received the notes. In the case of a check drawn on the employer's bank account, however, an intermediate party is involved; i.e., the bank at which the check is presented for payment. If the intermediate party, the bank, is ignored so that the check is not cashed within a reasonable time, the check is no longer equivalent to money. *C. D. Fountain*, 59 T.C. 696, 702 (1973). Cf. *Randall N. Clark*, 58 T.C. 94 (1972).

Delivery of the note to the trust does not extinguish the obligation of the petitioner to contribute to the trust as is clearly demonstrated by section 3–802 of the U.C.C. adopted by Illinois which provides:

Section 3–802. Effect of Instrument on Obligation for Which It Is Given.

(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

(a) the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

(b) *in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment.* If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation. [Emphasis added.]

If the obligation upon which a note is given is suspended until presentment for payment as the U.C.C. quoted above indicates, it is difficult to see how it can be said that the contribution to the profit-sharing plan has been paid. Although the above-quoted provision of the U.C.C. was not applicable when we decided *Logan Engineering Co.*, *supra*, *Estate of Modie J. Spiegel*, *supra*, *Slaymaker Lock Co.*, *supra*, *Time Oil Co.*, *supra*, and *Wasatch Chemical Co.*, *supra*, our holdings appear to us to be consistent with the U.C.C.

As we have observed before, Congress imposed the requirement of *payment* upon contributions to pension and profit-sharing plans even though such requirement is not imposed upon other deductions of ac-

crual basis taxpayers. Congress, at the present time, is considering legislation to correct abuses in pension and profit-sharing plans. The Senate bill contemplates amendment of section 503(b) to further prohibit transactions between the trust and related parties, including the employer. Lending between the trust and the employer is prohibited by the terms of the Senate bill. The Report of the Senate Finance Committee accompanying S. 1179 contains the following:

It is intended that prohibited loans include the acquisition by the trust of a debt instrument (such as a bond or note) which is an obligation of a party in interest. (However, the transition rules, described below, establish special rules regarding certain debt instruments held by the trust on August 21, 1973.) Similarly, the committee intends that it would be a prohibited transaction (in effect, a loan by the trust to the employer) if the employer funds his contributions to the trust with his own debt obligations. [S. Rept. No. 93–383, 93d Cong., 1st Sess., p. 98 (1973).]

The provision proposed by the Senate is now a part of H.R. 2 which was passed by the Senate on March 4, 1974. The House version of H.R. 2 and the Senate version of H.R. 2 are presently pending before a conference.

Clearly the Senate intends the result our decisions have sought to achieve.

We followed our prior decisions in *Logan Engineering* and *Slaymaker*, when we decided *Time Oil*. The Court of Appeals for the Ninth Circuit reversed us in that case following the Third Circuit in *Sachs* v. *Commissioner, supra,* and *Miller* v. *Commissioner, supra.* The Ninth Circuit recognized the question to be close but observed that it was unnecessary to set up a conflict of circuits.

Our most recent case, *Wasatch Chemical,* involved 5-year unsecured promissory notes, not demand secured notes as we have here; therefore, we applied only our prior decision in *Logan Engineering.* The Tenth Circuit reversed our decision and remanded the case for a determination of the fair market value of the promissory notes. It followed *Sachs* and *Time Oil* and concluded that term notes were equivalent to cash. It also pointed out that we recognized that the transfer of real property constituted "payment," citing *Colorado National Bank of Denver,* 30 T.C. 933 (1958). We have no quarrel with the proposition that the "payment" required by section 404(a) can be satisfied with a transfer of property, but a promissory note in the hands of the obligor is not property of the obligor for the purposes of section 404(a). We rejected such a proposition in *Slaymaker Lock Co.,* 18 T.C. 1001, 1006 (1952), and continue to believe it to be unsound.

Our prior decisions are sound and are based on congressional intent now being reconfirmed by Congress and they are also in harmony with the U.C.C. provisions in Illinois.

We, therefore, continue to hold that the requirement of "payment" of section 404(a) is not satisfied by delivery of promissory notes of the employer seeking the deduction for the contribution to the pension or profit-sharing plan.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

IRWIN, *J.*, dissenting: I respectfully disagree with the majority. In my opinion the delivery of petitioner's interest-bearing secured promissory notes payable on demand constituted payment for the purposes of section 404(a). Unlike the majority I would find cash equivalence. Cf. *Cowden* v. *Commissioner*, 289 F. 2d 20, 24 (C.A. 5, 1961).

I would also dispute the majority's finding for an additional reason. We have previously held that the delivery of property constitutes payment. *Colorado National Bank of Denver*, 30 T.C. 933 (1958). However, the majority summarily determines that since the notes are not property in the hands of the obligor they are not property. I suggest that the proper test of whether the notes constitute property should be directed to whether they are property in the hands of the holders, not the obligors. Cf. *Denver & Rio Grande Railroad Co.* v. *United States*, 318 F. 2d 922, 924 (Ct. Cl. 1963).

In determining that payment did not occur, the majority further relies upon the Uniform Commercial Code. Without considering the merits of their interpretation, I do not believe that the U.C.C. should be employed to determine whether payment has occurred for Federal income tax purposes. Whether the delivery of the promissory notes constituted payment for the purposes of section 404(a) is a matter of Federal tax law, not State law. Cf. *Morgan* v. *Commissioner*, 309 U.S. 78 (1940).

It appears that there is implicit in the majority's reasoning a desire to protect the employees under the plan. However, section 404(a) only requires payment, not payment in cash. In my opinion other provisions of the Code provide the fund with sufficient protection. See, e.g., secs. 401(a)(2) and 503(b). Furthermore, the legislative history of section 404(a) reveals only that Congress intended actual payment as a requisite to deduction, not payment in cash. See *Logan Engineering Co.*, 12 T.C. 860, 867 (1949); *Wasatch Chemical Co.* v. *Commissioner*, 313 F. 2d 843, 845 (C.A. 10, 1963), for a discussion of the legislative history. While the majority relies upon *P. G. Lake, Inc.* v. *Commissioner*, 148 F. 2d 898, 900 (C.A. 5, 1945), for the proposition that the ordinary and usual meaning of the term "payment" is "to liquidate in cash," a review of the cases cited in *P. G. Lake* reveals little foundation for such a proposition. *P. G. Lake* involved constructive payment and the clear implication from the cases relied upon therein is that payment

means to liquidate in cash or cash equivalent. See, e.g., *Helvering* v. *Price*, 309 U.S. 409 (1940). In addition, I believe that the narrow definition adopted by the majority is not in harmony with the widespread use of commercial paper and I, therefore, cannot subscribe to it.

Finally, while the delivery of one's own note as payment might, in substance, be viewed merely as a loan transaction, this factor should not necessarily affect the allowance of the deduction. It seems evident that a corporation may borrow from its pension fund and use the proceeds to meet its contribution requirements provided the transaction does not fall within the prohibitions of section 503. Viewing the instant situation in this light, respondent's proper course of action should be through section 503, not section 404(a). I can find no legislative support or other compelling reason to restrict the meaning of the term "payment" as the majority has done.

---

QUEALY, *J.*, dissenting: In its majority opinion, the Court reaffirms its earlier decisions with respect to what constitutes payment within the meaning of section 404(a) notwithstanding that three of those decisions have been rejected by Courts of Appeals for the 3d, 9th, and 10th Circuits. See *Sachs* v. *Commissioner*, 208 F. 2d 313 (C.A. 3, 1953); *Time Oil Co.* v. *Commissioner*, 258 F. 2d 237 (C.A. 9, 1958); and *Wasatch Chemical Co.* v. *Commissioner*, 313 F. 2d 843 (C.A. 10, 1963).

More than 10 years have elapsed since the most recent of those cases, during which time the Congress has considered several major revisions of the internal revenue laws and numerous technical amendments without addressing itself to this question. As pointed out in the majority opinion, a restriction upon the use of obligations of the employer as payments to a qualified pension plan was finally incorporated in H.R. 2, different versions of which were passed by the House and the Senate in this the 93d Congress, which are presently pending before a House-Senate conference. Rather than conclude that this belated action on the part of the Congress warrants the reaffirmance by this Court of a position previously rejected by the three appellate courts, I would conclude the opposite.

Notwithstanding the concept that this Court has assumed the role of a "national court" in questions involving the internal revenue laws, we must recognize that the appellate courts are also entitled to make such determinations. At some stage, we must be willing to accept a reversal of our position, even though we may not be wholly convinced of our error. In this situation, I think that we have passed beyond that point. After three reversals and the lapse of more than 10 years, taxpayers should be entitled to rely upon the decisions of the appellate courts.

HALL, *J.*, agrees with this dissent.