## DALLAS C. WOOD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 322-89.          Filed September 27, 1990.

*Timothy M. Haake* and *Robert G. Nath,* for the petitioner.

*David Albert Mustone,* for the respondent.

COHEN, *Judge:* Respondent determined that petitioner is liable for excise taxes under section 4975(a) in the amount of $3,000 for 1984, $5,700 for 1985, and $5,700 for 1986. Respondent also determined that petitioner is liable for additions to tax under section 6651(a)(1) for failure to file excise tax returns, but respondent has now conceded the additions to tax.

The issue for decision is whether contribution of property to a defined benefit pension plan in order to satisfy the employer's funding obligation is a prohibited transaction, i.e., a "sale or exchange," within the meaning of section 4975(c)(1)(A).

Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue.

### FINDINGS OF FACT

The material facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Alexandria, Virginia, when he filed his petition in this case. During the years in issue, petitioner was a self-employed real estate broker.

In 1983, petitioner sold his principal residence. The buyers of the residence executed a deed of trust note in favor of petitioner for $60,000.

During 1984, petitioner was the real estate broker for the sale of two residential properties. The purchase agreement for each property provided, in part, that the purchasers would execute second trust deed notes in favor of the sellers. Petitioner subsequently purchased these notes, paying $32,000 for a note with a face value of $39,000 and $11,250 for a note with a face value of $15,000.

On October 16, 1984, petitioner adopted the Dallas C. Wood Defined Benefit Plan (the plan), effective January 1, 1984. Petitioner was the sole participant in the plan and served as the plan administrator and as the trustee.

The funding requirements of the plan were set forth in Article XIII as follows:

*13.01* Benefits provided by this Plan and Trust shall be funded in accordance with the provisions of the Employee Retirement Income Security Act of 1974. The determination of contributions, shall be calculated using an accepted actuarial method. The calculations shall be performed by the actuary selected and approved by the Employer. The actuarial method utilized in funding this Plan and Trust shall be as provided and defined under the Employee Retirement Income Security Act of 1974.

*13.02* A funding standard account shall be maintained for this Plan and Trust. Each Plan Year the funding standard account shall be debited with the amount determined under Section 13.01 of this Plan and Trust and credited with the applicable contribution made for such Plan Year. The funding standard account will be credited or debited with such other amounts as may result from Plan and Trust changes, actuarial assumption changes, actuarial gains and losses, any approved deficiencies as provided under the Employee Retirement Income Security Act of 1974. If the debits under the funding standard account exceed the credits, a deficiency will exist. Such deficiencies will be subject to the provisions of the Employee Retirement Income Security Act of 1974.

The plan did not require that the plan be funded in cash and specifically allowed investment of trust funds in noncash assets.

Petitioner relied on Sal Corrao of Certified Actuarial Services, Inc., to establish, fund, and operate the plan. The aggregate level cost method was adopted as the valuation method used to calculate the cost of the plan benefits.

Applying that method, the actuary calculated a cost of $114,000 as the required contribution for the year ended December 31, 1984.

In order to fund the plan, petitioner contributed the three third-party promissory notes previously acquired by him in the transactions described above. On his 1984 Federal income tax return, petitioner claimed a deduction of $114,000, the combined face amounts of the three notes, for a contribution to the plan. The total fair market value of the three notes at the times that they were transferred to the plan was $94,430.

The three promissory notes were payable by third-party obligors who were unrelated to petitioner and were not "disqualified persons" within the meaning of section 4975. The principal of each note was paid prior to the date on which the note was due.

## OPINION

Section 4975(a) and (b) imposes two levels of excise tax on any "disqualified person" who participates in a "prohibited transaction." There is no dispute in this case that petitioner is a disqualified person. See sec. 4975(e)(1) and (2). The parties disagree as to whether contributions of third-party promissory notes by petitioner to his Defined Benefit Pension Plan were prohibited transactions. The issue is not dependent on the nature of the promissory notes but may be generalized into the question of whether contribution by a disqualified person of property in satisfaction of the obligation to fund a defined benefit pension plan is a prohibited transaction.

Section 4975(c) defines prohibited transactions as follows:

SEC. 4975(c). PROHIBITED TRANSACTION.—

(1) GENERAL RULE.—For purposes of this section, the term "prohibited transaction" means any direct or indirect—

(A) sale or exchange, or leasing, of any property between a plan and a disqualified person;

(B) lending of money or other extension of credit between a plan and a disqualified person;

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or

(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

Section 4975(f) sets forth other definitions and special rules including the following:

(3) SALE OR EXCHANGE; ENCUMBERED PROPERTY.—A transfer of real or personal property by a disqualified person to a plan shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien which the plan assumes or if it is subject to a mortgage or similar lien which a disqualified person placed on the property within the 10-year period ending on the date of the transfer.

Respondent contends that petitioner's contribution of the notes to the plan should be treated as a sale or exchange consistent with other areas of the Internal Revenue Code in which transfer of property in satisfaction of an indebtedness, in this case the obligation to fund the plan, is taxed as a sale or exchange. Respondent argues that transfer of property in satisfaction of an obligation to fund is distinguishable from a voluntary contribution. According to respondent, section 4975(f)(3), which appears to define sale or exchange in the context of prohibited transactions, is a special rule applicable to voluntary contributions.

Petitioner contends that the prohibited transaction provisions of section 4975 relate only to operations of a plan and that section 4975 has no application to contributions to a plan. Petitioner argues that other sections of the Code, imposing sanctions for failure to satisfy the minimum funding standards applicable to defined benefit plans, are intended to implement the standards applicable to contributions. Petitioner points out that there is no compelling reason why an employer cannot contribute property in satisfaction of a funding obligation. For the reasons and to the extent discussed below, we agree with petitioner.

In *Colorado National Bank of Denver v. Commissioner*, 30 T.C. 933 (1958), we specifically held that a transfer of land to a pension trust was payment to the trust within the

meaning of section 404(a)(1)(C). We stated that "There is no reason why a contribution to a pension trust could not be made in property and still be deductible." 30 T.C. at 935. Respondent has not disputed this statement or argued that any legislation subsequent to our decision in *Colorado National Bank of Denver* changes that rule. Respondent has ignored that case, acknowledging, however, that "there is nothing in the Code which precludes the deduction of a contribution in-kind (to the extent allowable under I.R.C. sec. 404) even though it may constitute a nonexempt prohibited transaction under sec. 4975." A different rule applies, of course, to contribution of a sponsoring employer's own notes. *Don E. Williams Co. v. Commissioner,* 429 U.S. 569 (1977).

Respondent argues that this case illustrates the potential for harm if transfer of property by an employer in satisfaction of an existing funding obligation is not a prohibited transaction. We agree with respondent that this case demonstrates potential for abuse. Petitioner, without any apparent cause, overstated the value of the property contributed to the plan. He had purchased two of the notes at a discount, and, in his business, he was well aware that the face value of the notes was not the fair market value of the notes. He admitted during his testimony at trial that he had not advised his actuarial consultant that he had purchased the notes at a discount. He failed to make the contribution that he claimed for deduction purposes, and he did not satisfy the funding requirements under the method calculated by his actuarial consultant.

Actual harm to a plan is not determinative of whether a transaction is prohibited within the meaning of section 4975. *Rutland v. Commissioner,* 89 T.C. 1137, 1146 (1987). Potential for abuse may be significant, however, if the legislative history and apparent purpose of a statute indicate that the statute was intended to prevent that specific abuse.

The statutory framework and legislative history of section 4975 indicate an intent to prohibit certain transactions without regard to actual abuse. In *Leib v. Commissioner,* 88 T.C. 1474 (1987), the taxpayer contended that the section 4975(a) excise tax should not be imposed when a transaction

would qualify as a prudent investment if judged under the highest fiduciary standards. Respondent argued that whether the prohibited transaction represented a prudent investment or benefited the plan was irrelevant. We agreed with respondent. We analyzed the express language and framework of the statute and the legislative history and concluded that Congress intended a blanket or unconditional prohibition against certain transactions, i.e., those listed in section 4975(c) and not exempted under section 4975(d).

The reasoning in *Leib,* however, indicates a result contrary to respondent's position in this case. If contributions of property are permitted under section 404, as we have held and respondent acknowledges, it is unlikely that Congress intended a blanket prohibition by taxation under section 4975.

Several applicable principles of statutory construction also suggest that a contribution of property to a defined benefit pension plan should not, per se, be deemed a prohibited transaction under section 4975(c)(1)(A). First, all parts of a statute must be read together, and each part should be given its full effect. See, e.g., *Woods v. Commissioner,* 91 T.C. 88, 98 (1988). Thus, section 4975 must be read as part of the comprehensive provisions of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, 88 Stat. 829. The excise tax provisions adopted under ERISA include, among other things, excise taxes on self-dealing by private foundations, section 4941, and the excise tax on failure to meet minimum funding standards set forth in section 4971.

Section 4941(d)(1) lists transactions that constitute "self-dealing" in terms indistinguishable from those prohibited transactions listed in section 4975(c). Section 4941(d)(2)(A) is comparable to section 4975(f)(3) in specifying that a transfer of property shall be treated as a sale or exchange if the property is subject to a mortgage or similar lien placed on the property by the disqualified person and assumed by the transferee. Respondent affirmatively asserts that sections 4941(d) and 4975(c) should be interpreted in a consistent manner and cites revenue rulings in which the Commissioner has taken the position that a transfer of property to

a private foundation in cancellation of an indebtedness was a sale or exchange and an act of self-dealing under section 4941. Implicitly recognizing that contributions of property to a private foundation are not prohibited and are common, respondent argues that contributions in-kind that are purely voluntary are treated differently than contributions that discharge an existing obligation.

We agree that prohibited transactions for purposes of qualified pension plans are comparable to acts of self-dealing in relation to private foundations. Compare our discussion in *Leib v. Commissioner, supra,* with *Gershman Family Foundation v. Commissioner,* 83 T.C. 217, 225 (1984); see H. Conf. Rept. 93-1280, 1974-3 C.B. 415, 467 n. 2; cf. *Lambos v. Commissioner,* 88 T.C. 1440, 1451-1452 (1987). Nothing in the provisions dealing with private foundations, however, persuades us that an unexpressed distinction between voluntary and required contributions should be read into the provisions dealing specifically with qualified pension plans.

Respondent also argues that the separate sanction for failure to satisfy funding standards set forth in section 4971 does not preclude application of both sanctions to the same set of circumstances. Citing *D.J. Lee, M.D., Inc. v. Commissioner,* 92 T.C. 291, 294-295 (1989), on appeal (6th Cir., May 3, 1989), respondent asserts that "[section 4971] was intended to deal with entirely different concerns than sec. 4975." That case applied section 4971 to an accumulated funding deficiency. It did not compare or discuss section 4975. In any event, if section 4975 was intended to deal with different concerns than section 4971, concerns about overvaluation of contributed property are not a justification for a blanket prohibition of contributions of property. (Other provisions, such as sections 6653(a) and 6661, apply to excessive deductions.) Consideration of other provisions of ERISA, therefore, suggests that the scope of section 4975 should be confined to the plain meaning of its language.

All parts of section 4975 must also be read together and given effect. Petitioner argues that section 4975(f)(3) is rendered unnecessary and thus meaningless by respondent's interpretation that a contribution of property in satisfaction of a funding obligation is a sale or exchange. Respondent

argues that the special definition of sale or exchange would still apply, but only to voluntary contributions. Respondent's interpretation would diminish the meaning of section 4975(f)(3) in a way not justified by any language in the statute. There is no indication in any part of ERISA that section 4975(f)(3) applies only to voluntary contributions or transfers and not to transfers in satisfaction of a funding obligation.

Petitioner's argument that section 4975 applies only to operations of a plan, not to contributions, is supported by the language in section 4975(c)(1)(A), (B), and (C), describing transactions *between* a disqualified person and a plan. Similarly, section 4975(c)(1)(D) refers to transfers by a plan to a disqualified person, and sections 4975(c)(1)(E) and (c)(1)(F) refer to acts by which a disqualified person who is a fiduciary deals with plan assets or receives consideration relating to transactions involving plan assets. All of these described transactions involve an act by a person who is acting on behalf of the plan as well as something done by the disqualified person on his or her own behalf. By their nature, these activities occur subsequent to funding of the plan and with respect to preexisting plan assets.

We cannot agree with petitioner, however, that none of the provisions of section 4975 applies to contributions. Section 4975(f)(3) specifically describes certain *transfers to* a plan by a disqualified person as a sale or exchange for purposes of section 4975. This language would include contributions to a plan.

Thus a second applicable principle of statutory construction is that, when Congress has dealt with a particular classification with specific language, the classification is removed from the application of general language. See *Energy Resources Ltd. v. Commissioner*, 91 T.C. 913, 916-917 (1988). In other words, detailed definitions of sale or exchange for purposes of the prohibited transaction rules should be applied in lieu of general definitions found in other areas of the tax law. See, e.g., *Essenfeld v. Commissioner*, 37 T.C. 117, 122-123 (1961), quoting *United States v. Chase*, 135 U.S. 255, 260 (1890).

The parties have stipulated that petitioner will be required to report, as capital gain, the difference between the

face value of the notes and the amount of his purchase price for the notes. (The rationale of this result is unstated and unclear.) Although petitioner's transfer of the notes to the plan is a sale or exchange for purposes of recognition of income to him, it does not necessarily follow that the transfer is a prohibited transaction under section 4975. With respect to transfers to a plan by a disqualified person, unaccompanied by affirmative acts on behalf of the plan, section 4975(f)(3) provides the definition of sale or exchange.

A third principle of statutory construction, i.e., that penalty provisions must be strictly construed, is also of assistance in interpreting section 4975. See *Commissioner v. Acker,* 361 U.S. 87, 91 (1959). Because its purpose as a blanket prohibition is to deter certain types of conduct, the excise tax imposed under section 4975(a) is in the nature of, and for some purposes is, a penalty provision. See *Nieto v. Ecker,* 845 F.2d 868, 874 n. 6 (9th Cir. 1988); cf. *Matter of Unified Control Systems,* 586 F.2d 1036, 1039 (5th Cir. 1978); compare *Latterman v. United States,* 872 F.2d 564, 568-570 (3d Cir. 1989).

Respondent assumes but does not concede that section 4975(a) imposes a penalty tax. He asserts:

the issue in this case would still be whether there is "any expressed or necessarily implied provision or language . . ." (*Commissioner v. Acker,* 361 U.S. 87, 91 (1959)) which allows for the treatment of contributions in-kind as a prohibited transaction. And, in respondent's view, the "sale or exchange" language contained in sec. 4975(c)(1)(A) provides the necessary expression of congressional intent in this context. This is especially true in view of the fact that the statutory language itself manifests an intent that sec. 4975(c)(1) be given a broad reading.  * * *

We cannot agree that the language of section 4975 provides the necessary expression (1) that contributions of property are subject to different standards than contributions of cash, or (2) that contributions required under a plan are subject to different standards than voluntary contributions. These distinctions are basic, and the disputed transactions occur frequently enough that, we believe, Congress would have stated the distinctions if they were intended. Compare section 408(a)(1), requiring (with limited exceptions) that contributions to an Individual Retirement Account be in cash. See also section 401(a)(8), providing a special rule for

forfeitures under a defined benefit plan. The provisions of ERISA as a whole are unusually detailed and specific. We decline to impose on section 4975(a) refinements that have not been specified by Congress.

We acknowledge that the interpretation given by the U.S. Department of Labor (DOL) to the parallel language in title I of ERISA, section 406(a), is consistent with respondent's position in this case. See DOL Advisory Opinions 81-69A (July 28, 1981), and 90-05A (Mar. 29, 1990). The DOL has general interpretative authority under both titles I and II of ERISA; consequently, the DOL's interpretation of the corresponding provisions under title I is entitled to consideration in construing section 4975(c). In this case, however, we conclude that the language of the statute, interpreted in accordance with the principles stated above, must control. The language does not support the position of DOL or of respondent.

In summary, we conclude that nothing in ERISA changes prior law permitting transfers of property to a pension trust. We believe that, if such a change had been intended, Congress would have said so directly rather than by the imposition of a tax under section 4975.

For the foregoing reasons,

*Decision will be entered for the petitioner.*